UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DOWELL,                    )
                                   )
            Plaintiff,             )
                                   )
       vs.                         )        Case No. 4:11CV615 CDP
                                   )
LINCOLN COUNTY, et al.,            )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

Plaintiff Michael Dowell brought this § 1983 action against Christopher

Bartlett, Joseph Eagan, Rodney Boyer, Harry Dilworth, William Carson, and

Lincoln County, Missouri.   Dowell was acquitted of murder charges, and he seeks

damages related to his interrogation, arrest, and prosecution on those and related

charges.   Defendants have moved for summary judgment on all claims.   As more

fully described below, I will grant the motions for summary judgment except for the

claims in Count 3, which alleges an unconstitutional search.   That count alone

remains for trial.

## Background

On January 7, 1991, the body of Stephanie Hogland was found in a ditch on

Highway W in Lincoln County, Missouri.   Dr. Mary Case of the St. Louis County

Medical Examiner's Office performed the autopsy on Hogland and concluded that

the cause of death was closed head trauma.   Dr. Case's report also noted blunt

trauma of the upper and lower extremities, and sexual assault.   Dr. Case found six lacerations in Hogland's vagina, and she cited these lacerations as support for her finding of sexual assault.   No arrest was made in connection with the case for over fifteen years.

On December 4, 2006, the Combined DNA Index System generated a match between a sample recently provided by Michael Dowell for an unrelated case and a sample from the fifteen-year-old investigation of the rape and murder of Hogland. On December 14, 2006, the Greater St. Louis Area Major Case Squad was activated at the request of the Lincoln County Sheriff's Department.   Captain William Carson was deputy commander of the Major Case Squad.   During the course of the investigation, Carson worked with Sergeants Joseph Eagan, Harry Dilworth, Rodney Boyer, and Christopher Bartlett.

On December 14, 2006, Sergeants Eagan, Dilworth, and Boyer drove a minivan to the home that Dowell shared with his mother.   Upon request by the three officers, Dowell agreed to accompany them to the police station for questioning. Sergeant Boyer drove the van to the location where Hogland's body had been found in 1991.   During the drive, the officers informed Dowell that they were investigating Hogland's murder and showed him a photograph of Hogland.   In response to the officer's questions regarding the incident, Dowell replied that he did not know Hogland.

Once at the location where Hogland's body had been found, Sergeants Eagan and Dilworth exited the van and asked Dowell to do the same, but he refused. Defendants then reentered the van and drove Dowell to the Lincoln County Sherriff's Department, where they arrived shortly before 6:00 p.m. on December 14, 2006. Dowell was left alone in an interrogation room for approximately fifteen minutes. Sergeants Boyer and Dilworth then entered the room, provided Dowell with a bottle of water, and began asking him questions. They read him his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Dowell signed and initialed a *Miranda* waiver. Sergeant Boyer asked Dowell whether he had ever had his *Miranda* rights read to him before, and Dowell answered in the affirmative. The interrogation was videotaped, but the recording stopped abruptly after approximately thirty minutes of run-time.

The questioning continued during the break in recording. When the video did resume, Sergeants Boyer, Dilworth, and Eagan were in the room with Dowell. Immediately upon the recording resuming, Dowell stated, "If I have to hire a lawyer to explain it, that's what I got to do." The officers continued to ask Dowell questions and he continued to respond. They told him that his DNA was found inside Hogland, but Dowell continued to deny knowing or having had sex with her. Approximately seven minutes after the recording resumed, Dowell stated, "Let's go in front of the judge." One minute later, he stated, "Hire me a lawyer,

motherfucker. I'm gonna need about 100 grand, right? Hire me a lawyer . . ." Dowell continued to talk immediately after making these statements. At one point, Sergeant Boyer began play-acting a trial in front of Dowell, pretending to put on the evidence against him. This lasted for over six minutes, during which time Boyer also referenced the fact that Missouri is a death penalty state.

Approximately seventeen minutes after the recording resumed, Dowell asked to use the restroom and Sergeant Eagan responded that he could go "in just a minute." Dowell then asked to call his mother. Approximately four minutes later, Dowell again mentioned his requested phone call. Then, approximately twenty-one minutes after the recording had resumed, Dowell stated that he was "invoking his rights," asked to be taken back to his cell, asked for a phone call, and declared that he had nothing more to say. A few minutes later, Dowell asked whether the officers would let him pee. He asked to use the restroom again one more time. About fifty-one minutes after the recording had resumed, and thirty-four minutes after his initial restroom request, Dowell was taken to use the restroom and the interrogation ended. During the entire course of the interrogation, Dowell denied knowing Hogland, having had sexual intercourse with her, or recognizing her car. He admitted that he may have recognized her photo from seeing similar ones posted after her disappearance. At one point during the interrogation, Dowell was placed under arrest. Captain Carson was present at the

station for the duration of the interrogation, and watched the majority of it on a monitor from a separate room.

Later on the night of December 14, 2006, Sergeants Eagan, Dilworth, and Boyer returned to Dowell's residence. Dowell's mother owned the house, and had access to Dowell's room when he was gone. She gave oral consent for the officers to search his room, although she later testified that she only did so upon the officers' assertion that Dowell had already consented to the search. There is also a written consent form signed by Dowell's mother, but she testified that she does not remember signing it and does not believe that the signature affixed thereon was her own. Dowell was not present at the search.

On December 15, 2006, defendant Bartlett drafted and filed a probable cause statement to support an arrest warrant for the murder and rape of Stephanie Hogland. The statement referenced Dr. Case's autopsy report, including her citation of vaginal trauma and finding of rape. The statement also noted the DNA match between Dowell's submitted sample and a sample retrieved from Hogland's underwear. Finally, the statement referenced the prior day's interrogation, including Dowell's denial of knowing or having had sexual intercourse with Hogland. Later on December 15, Bartlett and Dilworth went to Dowell's holding cell, read him the charges, and informed him that the State would be seeking the death penalty. Dowell claims that defendants attempted to coerce a confession out of him at this

time.  Dowell began crying, and according to Bartlett, admitted that he had slept with Hogland.

Dowell's preliminary hearing occurred on March 20, 2007.  Dowell was charged with first-degree murder, armed criminal action, rape, and in the alternative rape with infliction of serious physical injury.  Dowell moved for and was granted a change of venue to Boone County.  The armed criminal action and rape count were dismissed by the trial court as time-barred.  Because the State sought the death penalty, the rape with infliction of serious physical injury count was severed. Dowell filed a motion to suppress, which the trial court granted with respect to any statements made on December 14, 2006 after Dowell stated that he wanted the interrogation over and to go to his cell, and with regard to any statements Dowell made during the December 15, 2006 encounter.  Dowell went to trial on the murder charges and was found not guilty by a jury on October 3, 2008.  During the trial, the State offered videotaped testimony of Dr. Case.  Dr. Case testified that her finding of probable sexual assault was based on the entirety of the circumstances of how Hogland was found, and was not tied directly to the lacerations in Hogland's vagina. She also testified that she could not state her findings with "medical certainty," but that sexual assault was probable.  Dr. Case cited years of professional and educational experience in guiding her opinion.

After the murder acquittal, the remaining rape with infliction of serious physical injury count was dismissed without prejudice.   On October 11, 2008, Bartlett drafted a second probable cause statement.   This statement was nearly identical to the original, removing only the references to murder and to Dowell's December 14, 2006, interrogation.   The State subsequently refiled the rape with infliction of serious physical injury charge.   Dowell moved to dismiss the case with prejudice based on collateral estoppel, and the Circuit Court granted the motion to dismiss on April 7, 2009.   The State appealed, and the Missouri Court of Appeals affirmed the dismissal.   Dowell remained in custody until the April 7, 2009 dismissal by the Circuit Court.

Dowell brought this suit on April 7, 2011 under 42 U.S.C. § 1983, alleging ten counts related to his arrest, interrogation, and prosecution, and to the hiring, training, and supervision of the officers involved in his case.   On March 28, 2012, Dowell filed an amended complaint.   Among the amendments was the addition of count 3, which alleges unlawful search of his residence.   Defendants Eagan, Boyer, Carson, and Dilworth have moved for summary judgment on counts 1, 2, 3, and 5. Defendants Lincoln County and Bartlett have moved for summary judgment on counts 1, 2, 4, 6, 7, 8, and 9.

## Discussion

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here, the plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

## A. Count 1: Compelled Testimony and Substantive Due Process

In count 1, brought under 42 U.S.C § 1983, Dowell alleges that defendants Bartlett,[1] Boyer, Eagan, and Dilworth violated his rights under the Fifth and Fourteenth Amendment by conducting an improper and overbearing interrogation. He alleges that the statements he made after his arrest were the product of "duress" and "wanton and deliberate psychological torture." The briefs clarify that he claims this was both a violation of his Fifth Amendment right not to be compelled to

---

[1] It is uncontested that Bartlett did not participate in the December 14, 2006 interrogation. Dowell only presented evidence that Bartlett was the individual who placed Dowell under arrest, and that Bartlett was present at the December 15, 2006 reading of charges. Bartlett would be entitled to summary judgment on Count 1 for this reason alone.

incriminate himself and that the interrogation so shocked the conscience that it violated his substantive due process rights.[2]

## 1. *Fifth Amendment Self-Incrimination*

Defendants are entitled to summary judgment on Dowell's claim that the interrogation violated his Fifth Amendment right against self-incrimination because the undisputed evidence shows that all statements used against him at trial were voluntary. "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (quoting U.S. Const. amend. V). "Freedom from compulsion lies at the heart of the Fifth Amendment, and requires us to assess whether a suspect's decision to speak was truly voluntary." *Missouri v. Seibert*, 542 U.S. 600, 624 (2004) (O'Connor, J. dissenting).

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (quoting *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001)). Whether a confession is involuntary is judged by the totality of the

---

[2] In his briefs Dowell also argues that defendants should be held liable for conducting an improper investigation in violation of his substantive due process rights. This claim is not pleaded, but even if it were, it would fail for the same reason that the substantive due process claim he did plead fails.

circumstances, and the court must look at the "conduct of the officers and the characteristics of the accused." *Id.* (citing *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 952 (8th Cir. 2001). "One of the key concerns in judging whether confessions were involuntary . . . [is] the intelligence, mental state, or any other factors possessed by the defendant that might make him particularly suggestible, and susceptible to having his will overborne." *Id.* (quoting *Wilson*, 260 F.3d at 952).

The Court has created "prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause." *Chavez*, 538 U.S. at 770. These rules include the *Miranda* warnings. In addition to requiring that a suspect be informed of his rights, *Miranda* held that once a suspect asserted his right to counsel, the interrogation must cease until an attorney is present. *Miranda,* 384 U.S. at 474. In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Court further held that a valid waiver of a suspect's right to counsel "cannot be established by showing that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. Interrogation can only proceed upon counsel being made available or if the suspect himself initiates further communication. *Id.* at 485.

The Court has held that the *Miranda* exclusionary rule "sweeps more broadly than the Fifth Amendment itself," *Oregon v. Elstad*, 470 U.S. 298, 306 (1985), and that the *Miranda* safeguards are "not themselves protected by the Constitution."

*Michigan v. Tucker*, 417 U.S. 433, 444 (1974). Accordingly, a litigant cannot maintain an action under § 1983 based on a violation of the *Miranda* safeguards, even if the evidence obtained in violation of *Miranda* was admitted against him at trial. *Hannon v. Sanner*, 441 F.3d 635, 636-37 (8th Cir. 2006). The core of the Fifth Amendment is not implicated unless the statements are compelled. *Id.* at 637. Like *Miranda*, the *Edwards* rule is not a constitutional mandate but a "judicially prescribed prophylaxis." *Maryland v. Shatzer*, 559 U.S. 98 (2010).

Furthermore, it is not until compelled statements are used in a criminal case that a violation of the self-incrimination clause occurs. *Chavez*, 538 U.S. at 767. The Supreme Court declined to decide when a "criminal case" commences, except to say that police questioning does not constitute a case and that a case "at the very least requires the initiation of legal proceedings." *Id.* at 766-67. There is a circuit split as to what constitutes the use in a criminal case sufficient to trigger damages in a § 1983 action. Three Circuits have held that the statements must be actually used at a trial. *See Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005); *Burrell v. Virginia*, 395 F.3d 508, 513-14 (4th Cir. 2005); *Renda v. King*, 347 F.3d 550, 558-59 (3rd Cir. 2003). But the Seventh Circuit has held that use at a suppression hearing is sufficient, *see Best v. City of Portland*, 554 F.3d 698, 699 (7th Cir. 2009), and the Second Circuit has held that use at a bail hearing is sufficient, *see Higazy v. Templeton*, 505 F.3d 161, 172-73 (2nd Cir. 2007).

While the Eighth Circuit has not discussed this distinction in detail, it has provided a strong indication that it would require the statements to have actually been used in a criminal trial in order to support a § 1983 claim. In *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012), the four plaintiffs were convicted and later pardoned for participating in a rape and murder. *Id.* at 721. They brought § 1983 claims alleging their due process rights had been violated in part by the use of coercion to get them to plead guilty. *Id.* One of the plaintiffs, James Dean, made a confession regarding his involvement in the crime in response to allegedly coercive investigations. *Id.* at 726-27. When Dean entered his guilty plea, his statements were presented to the judge as an example of evidence that would have been presented at trial. *Id.* at 727-28. In a footnote, the Eighth Circuit dismissed plaintiffs' Fifth Amendment claim, noting that "[s]uch a claim fails . . . because Plaintiffs did not proceed to a criminal trial." *Id.* at 731 n.4. *Winslow* indicates that the Eighth Circuit agrees with the Third, Fourth, and Fifth Circuits that a statement must be introduced at trial to amount to use in a criminal case.

Defendants Eagan, Dilworth, and Boyer picked Dowell up from his residence and drove him in a van to the site where Hogland's body was found, questioning him along the way. Dowell denied knowing Hogland. In his desposition, Dowell stated that he told the officers during the van ride that he would not answer any questions without a lawyer. The van eventually arrived at the Lincoln County

Sherriff's Department, where Dowell was read the *Miranda* warnings and signed a *Miranda* waiver. Defendants questioned Dowell at the station, videotaping the interrogation. There was a break in the video recording, although the interrogation itself was continuous. Immediately after the videotape resumed, Dowell stated, "If I have to hire a lawyer to explain it, that's what I got to do." Defendants then told Dowell that his DNA was found in Hogland's vagina, after which he continued to deny knowing or having slept with her. About eight minutes after the recording had resumed, Dowell stated, "Hire me a lawyer." Thirteen minutes later, he stated that he was "invoking his rights" and wanted to be taken to a cell. Admitted at Dowell's criminal trial were his statements denying that he knew Hogland, including the denials he made after being told his DNA was found in Hogland. All statements made after Dowell said that he was invoking his rights were suppressed.

Dowell claims that his statements were made involuntarily for a number of reasons. He argues that there is a question of fact as to whether defendants read him his *Miranda* warnings before questioning him in the van. Dowell further argues that defendants yelled at him, threatened him with the death penalty, and spit on the floor of the interrogation room, and that they continued to interrogate him after he requested to have an attorney present, to remain silent, to have the interrogation cease, to be placed in a jail cell, to be presented before a judge, to use a restroom, and to make a phone call.

The undisputed facts do not support Dowell's Fifth Amendment claim. Even if defendants failed to read Dowell the *Miranda* warnings in the van, "[p]olice cannot violate the Self-Incrimination Clause by taking unwarned though voluntary statements." *U.S. v. Patane*, 542 U.S. 630, 643 (2004); *see also Chavez*, 538 U.S. at 772; *Hannon*, 441 F.3d at 636-37. The evidence shows that Dowell's statements in the van, as well as at the police station, were voluntary. In his deposition, Dowell stated that he felt threatened during the interrogation. However, Dowell also testified that defendants never used physical violence against him, nor did they say anything that he interpreted as a threat of violence. *See Lebrun*, 363 F.3d at 725.

It is also evident from the videotaped interrogation that Dowell was of at least average intelligence, had previous contact with law enforcement, and had been read the *Miranda* warnings on some prior occasion. *See id.* at 726 (citing *United States v. Gallardo-Marquez*, 253 F.3d 1121, 1123-24 (8th Cir. 2001) (concluding confession was voluntary where defendant was of average intelligence and had prior contact with law enforcement)). Further, the video shows that upon arriving at the station immediately after the van ride, Dowell was calm and composed, and did not give any indication that the officers had so intimidated him as to overbear his will. *Id.* at 727. At his deposition, Dowell explained that he lied about knowing Hogland throughout the course of his interrogation because he did not have an attorney present. He said that he was "very careful as to not answer truthful." It is also

noteworthy that Dowell made the same statements – that he did not know and had not slept with Hogland – throughout the entire course of the interrogation, and never changed his story in response to the officers' actions. There is no evidence that would allow a fact-finder to conclude that his statements were involuntarily made. Instead, the undisputed, objective evidence shows that Dowell was thoughtful and calculating about his responses, and that his capacity for self-determination was not impaired. *See id.*

As to the alleged *Miranda* violations, these are insufficient to support a § 1983 claim without also showing that any statements were coerced. *See Chavez*, 538 U.S. at 772; *Hannan*, 441 F.3d at 636-37. Dowell argues that a question of fact exists as to what occurred during the portion of the interrogation that was not recorded. However, neither Dowell's complaint nor any of his evidence supports the contention that the unrecorded portion of the interrogation was coercive in nature. Mere speculation is insufficient to raise a genuine issue of fact to survive a motion for summary judgment. *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1050-51 (8th Cir. 2012).

As to any statements Dowell made after stating that he was "invoking his rights," he cannot claim a Constitutional violation for the additional reason that no statements beyond this point in the interrogation were introduced against him at trial. *See Chavez*, 538 U.S. at 767; *Winslow*, 696 F.3d at 731 n.4. For the foregoing

reasons, I will grant defendants' motion for summary judgment with regard to Dowell's Fifth Amendment claims under count 1.

### 2.  *Fourteenth Amendment Substantive Due Process*

Dowell also claims that the circumstances of the interrogation violated his substantive due process rights under the Fourteenth Amendment.   Whether or not the interrogation was covered by the Fifth Amendment's self-incrimination clause does not bear on whether a plaintiff has an actionable claim under the Fourteenth Amendment's due process clause.   *Chavez*, 538 U.S. at 773.   Accordingly, I must evaluate the questioning of Dowell as it relates to the Fourteenth Amendment independent of the discussion above.

It is generally accepted that to violate one's substantive due process rights under the Fourteenth Amendment, the alleged misconduct must "shock the conscience."   *Rochin v. California*, 342 U.S. 165, 172 (1952).   The Eighth Circuit has held that a plaintiff must demonstrate "*both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."   *Schmidt v. Des Moines Pub. Schs.,* 655 F.3d 811, 816 (8th Cir. 2011) (quoting *Norris v. Engles*, 494 F.3d 634, 638 (8th Cir. 2007) (emphasis in original)).   Furthermore, there is a "heavy burden on those wishing to extend

substantive due process into new arenas." *Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994).

The official conduct "most likely to rise to the conscience-shocking level" is the "conduct intended to injure in some way unjustifiable by any government interest." *Chavez*, 538 U.S. at 775 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). *Chavez*, for instance, refers to "police torture or other abuse." *Id.* at 773. The Eighth Circuit has held that "even though the police use overreaching tactics such as the use of threats or violence, or the use of direct or indirect promises, such promises or threats will not render the confession involuntary unless it overcomes the defendant's free will and impairs his capacity for self determination." *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004). The Eighth Circuit further stated that conduct must rise to a level of "malice or sadism resulting in the inhumane abuse of power that literally shocks the conscience." *Id.*

Dowell argues that his interrogation was conscious-shocking for the same reasons that he claims his statements were involuntary. But the video shows nothing that rises to the level of "conscience-shocking" police behavior. Even taken in the light most favorable to Dowell, there is nothing to indicate that the defendants ever intended to injure him. Dowell stated that he felt the officers made threatening gestures, but conceded that they never used physical violence or actually voiced any threats against him. Docket No. 72-7 at 12-15. Even if threats were

made, this alone would not suffice to shock the conscience.  *Sheets*, 839 F.3d at 778.   And as discussed above, although Dowell now argues that there is a genuine issue of fact as to whether his rights were violated during the gap in the video recording, neither his complaint nor his deposition testimony nor any other evidence presented supports this conclusion.   The only physical injury even conceivable from the facts would arise from Dowell's ignored request to use the restroom.   Dowell is taken to the restroom approximately thirty-four minutes after he first requested to go, and this delay alone hardly shocks the conscience.   I therefore grant summary judgment as to Dowell's Fourteenth Amendment substantive due process claims under count 1.

## B.    Count 2:   Sixth Amendment Right to Counsel

Count 2 of Dowell's complaint seeks to recover under § 1983 based on the allegation that defendants Bartlett and Dilworth came to his cell on December 15, 2006, read the charges that had just been filed, and tried to get him to talk.[3] Defendants argue that no Sixth Amendment violation occurred, and even if it did, that they are entitled to qualified immunity.

Evaluating qualified immunity involves two steps:   (1) determining whether the facts shown by the plaintiff make out a violation of a Constitutional or statutory

---

[3] Although the complaint appears to allege that this claim also includes the lengthy December 14 interrogation by defendants Eagan, Boyer, and Dilworth, Dowell's brief does not argue that point, apparently conceding that none of the questioning on December 14 could violate the Sixth Amendment because charges were not filed until the next day.

right, and (2) whether that right was clearly established at the time of defendant's alleged misconduct.   *Winslow*, 696 F.3d at 730-31 (internal citations omitted). The Supreme Court has held that this two-step sequence is not mandatory, and a district court has discretion to decide the "clearly established" prong first in appropriate circumstances.   *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."   *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal citations and quotations omitted).

"The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that '[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence.'"   *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting U.S. Const. amend. VI).   The Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."   *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

Dowell was placed under arrest on December 14, 2006.   A probable cause letter and criminal complaint were filed for Dowell's case on December 15, 2006. Later that same day, defendants Bartlett and Dilworth read Dowell the charges in his cell.   Dowell denies that he made any statements, but Bartlett claims that Dowell

broke down and admitted to having had sex with Stephanie Hogland.[4]   Bartlett

testified about Dowell's alleged admission at the suppression hearing, but that

statement was ultimately suppressed and not used at trial.

It was not clearly established at the time of Dowell's arrest and trial that a

Sixth Amendment violation occurred before any statements were actually admitted

at trial.   Not until 2009 did the Supreme Court plainly hold that the Sixth

Amendment right to counsel "is infringed at the time of the interrogation," *Ventris*,

556 U.S. at 591-92.   The Court in *Ventris* even acknowledged that important

precedent had been equivocal on what exactly constituted a Sixth Amendment

violation:   "[*Massiah*] quoted various authorities indicating that the violation

occurred at the moment of the postindictment interrogation . . . [b]ut the opinion

later suggested that the violation occurred only when the improperly obtained

evidence was 'used against [the defendant] at his trial.'"   *Id.* (quoting *Massiah v.*

*United States*, 377 U.S. 201, 205-207 (1964)); *see also United States v. Chahia*, 544

F.3d 890, 899 (8th Cir. 2008); *Cinelli v. Revere*, 820 F.2d 474 (1st Cir. 1987) (§ 1983

recovery requires showing that plaintiff was prejudiced by Sixth Amendment

violation).

Furthermore, it was not clearly established at the time of the alleged violation

that the filing of a state criminal complaint would have triggered a suspect's Sixth

---

[4] Dilworth and another police officer who was present said they did not recall Dowell saying
anything.

Amendment right to counsel.   The Eighth Circuit has held that the filing of a criminal complaint and issuance of an arrest warrant do not constitute the initiation of an adverse judicial proceeding.   *Von Kahl v. United States*, 242 F.3d 783, 789 (8th Cir. 2001).   However, *Von Kahl* relied on *United States v. Moore*, 122 F.3d 1154 (8th Cir. 1997), which limited its holding to complaints filed pursuant to Federal Rule of Criminal Procedures 3.   *Moore*, 122 F.3d at 1156.

Furthermore, the Eighth Circuit distinguished *Moore* from *Chewning v. Rogerson*, 29 F.3d 418 (8th Cir. 1994), which addressed the right to counsel in a criminal case where an Iowa criminal complaint had been made against Chewning. *Moore*, 122 F.3d at 1156; *Chewning*, 29 F.3d at 419.   In *Chewning*, the Eighth Circuit held that the Sixth Amendment right to counsel attached "with the initiation of the state charges."   29 F.3d at 421-22.   But the parties had agreed that the Iowa complaint triggered Chewning's Sixth Amendment right to counsel, and the court ultimately held that the suspect had waived that right anyway.   *Id.* at 420, 422.   It is thus unclear whether the court would have held that the state complaint was sufficient to trigger Chewning's right to counsel even in the absence of the parties' stipulation on this point.   This scant and vaguely intertwining law regarding attachment of the right to counsel at the filing of a state criminal complaint hardly constitutes a "clearly established" standard.

Accordingly, "any reasonable official" would not have clearly understood that Bartlett and Dilworth's actions on December 15, 2006 were in violation of Dowell's Sixth Amendment right to counsel. Even if they elicited Dowell's alleged confession, it was not clearly established at that time that this violated his right without admission at trial, or that the right had even attached. I will therefore grant defendants' motion for summary judgment on count 2 as they are entitled to qualified immunity.

### C.    Count 3:   Fourth Amendment Violation

Count 3 of Dowell's first amended complaint alleges that defendants Dilworth, Boyer, and Eagan searched Dowell's residence without his consent. Defendants argue that the claim is time-barred and that Dowell's mother, who had common authority of the residence, gave her consent to the search.

The issue of whether a suit is time-barred is a question of law, which properly may be resolved by summary judgment provided there are no genuine issues of material fact in dispute. *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 589 (8th Cir. 2003). As discussed more fully in my June 27, 2012 memorandum and opinion denying defendants' earlier motion to dismiss raising this same issue, Dowell's § 1983 claims are governed by Missouri's five-year statute of limitations for personal injury claims. *See* Mo. Rev. Stat. § 516.120(4); *Sulik v. Taney Cnty, Mo.*, 393 F.3d 765, 767 (8th Cir. 2005). Unlawful search claims are presumed to have accrued

when the search occurred, unless plaintiff presents a reason for not knowing of the unlawful action at the time. *Wright v. Doe*, 400 Fed. App 'x 123, 124 (8th Cir. 2010) (citing *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)).

"The statute of limitations is an affirmative defense, . . . [defendants] who move for summary judgment on that basis bear the burden of showing that it bars plaintiff's claims." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. 2006). Defendants have failed to meet this burden. Dowell and his mother have given conflicting testimony regarding whether she told him about the search before or after his preliminary hearing. The search occurred on December 14, 2006, Dowell's preliminary hearing was held on March 20, 2007, and his amended complaint was filed March 28, 2012. There is thus a genuine issue of fact as to whether Dowell learned of the search before March 28, 2007.

Defendants also argue that Dowell's mother consented to the search. It is undisputed that Dowell's mother had common authority over the premises searched. But while she admits to having consented, she testified that she did so only because the officers told her that Dowell had already consented to the search. "The test in reviewing a consent search is whether, in the totality of circumstances, the consent is given voluntarily and without coercion." *U.S. v. Turpin*, 707 F.2d 332, 334 (8th Cir. 1983). Whether consent was voluntarily given is a factual question. *U.S. v.*

*Kelley*, 594 F.3d 1010, 1013 (8th Cir. 2010).   Misrepresentations can be evidence of coercion, and may invalidate consent if that consent was given in reliance on the misrepresentation.   *Id.*   (citing *Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968)).   In *Bumper*, the Court held that a law enforcement officer falsely claiming to have a search warrant warrant is effectively the same as announcing that the occupant has no right to resist, and thus coercive.   391 U.S. at 550.   Claiming authority by way of consent of a cohabitant, as Dowell's mother alleges here, similarly conveys that the occupant has no right to resist.   There is thus a genuine issue of material fact as to whether Dowell's mother voluntarily consented.

Because I find a question of fact as to the substance of this claim I must also reach defendants' argument that they are protected by qualified immunity.   Taking the facts in the light most favorable to Dowell – that the officers falsely told his mother that Dowell had already consented to the search – demonstrates a Constitutional violation.   Consent is only an exception to the warrant requirement for a search if given knowingly and voluntarily.   *See United States v. Farnell*, 701 F.3d 256, 262-63 (8th Cir. 2012).   Misrepresentations can be evidence that consent was coerced, and thus not given voluntarily.   *Turpin*, 707 F.2d at 334.   I also find that this right was clearly established at the time of the violation.   The law pertaining to voluntary consent and officers's misrepresentations has been established since *Bumper*, a 1968 case.   391 U.S. 543.   A reasonable officer would

understand that lying to a person about having authority to search her residence – in this instance, by claiming permission from a cohabitant – violates Constitutional guarantees of the Fourth Amendment.   Defendants are therefore not entitled to qualified immunity as to the unlawful search claim raised in count 3 of Dowell's first amended complaint, and I will deny summary judgment on that count.

**Counts 4, 7 and 8:   Rape Prosecution After Murder Acquittal**

After Dowell was acquitted on the murder charge, Bartlett prepared a probable cause statement to support the charge for rape with infliction of serious physical injury.   Dowell was held in jail for an additional six months until that charge was also dismissed.   The new probable cause statement was nearly identical to the original statement Bartlett had filed in 2007.   The second statement merely removed any references to murder and to the December 14, 2006 interrogation. Paragraph 2 of the statement, which referenced Dr. Case's autopsy report, was left intact.   Bartlett did not supplement or alter the probable cause statement in light of Dr. Case's more equivocal testimony at Dowell's criminal trial.   Dowell now brings multiple claims against Bartlett, arguing that Dr. Case's trial testimony changed the nature of the facts and so Bartlett misrepresented the facts by simply copying the first probable cause statement.

Count 4 of Dowell's complaint alleges that Bartlett violated Dowell's Fourth Amendment right against unreasonable seizure.   *See* U.S. Const. amend. IV.   An

arrest "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In challenging a probable cause statement, a plaintiff must show (1) that the police omitted facts with the intent to make, or in the reckless disregard of whether they thereby made, the affidavit misleading; and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause. *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986) (internal citations omitted). "Mere negligence" is not enough to show that an officer intentionally omitted information or acted with reckless disregard. *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005). Recklessness may be inferred from the fact of omission, but only when the material omitted would have been "clearly critical" to the finding of probable cause. *Id.*

The content of the 2008 probable cause statement is not precisely identical to Dr. Case's testimony at trial. However, Dowell has not shown that Bartlett intentionally omitted that testimony or acted with reckless disregard in relying upon the original probable cause statement and Dr. Case's original autopsy report. Bartlett did not attend Dowell's trial. While he was surely aware that Dowell had been acquitted, this fact alone would not call into question Dr. Case's original report. Even if Bartlett had reviewed Dr. Case's trial testimony, any inconsistencies are not so glaring as to indicate that the probable cause statement needed to be revised. At

worst, Bartlett may be guilty of "mere negligence" in redrafting the probable cause statement, but this is insufficient to show a Constitutional violation. *Carpenter*, 422 F.3d at 745.

Furthermore, Dowell has not shown that the affidavit, if supplemented with Dr. Case's trial testimony, would have been insufficient to support a finding of probable cause. Dowell argues that Dr. Case's findings were not made with "medical certainty," but neither probable cause letter ever mentioned her degree of certainty. And although she testified that the vaginal lacerations could have been caused by consensual sexual activity, Dr. Case testified that they were indicative of "forcible activity," that sexual assault was probable based on the circumstances, and that her opinion was based on experience and education as a forensic pathologist. It is also undisputed that, as reflected in the probable cause statement, the Missouri State Highway Patrol Crime Lab successfully matched the DNA extracted from Hogland's underwear to the DNA sample Dowell submitted to his probation officer. Even altered with Dr. Case's trial testimony, the contents of the probable cause letter would be sufficient to establish probable cause. For all of the foregoing reasons, I will grant defendants' motion for summary judgment with regard to count 4 of Dowell's first amended complaint.

Counts 7 and 8 are state-law claims that also rely on a showing that there was no probable cause for Dowell's arrest. Count 7 alleges that Dowell was falsely

imprisoned as a result of Bartlett's misleading probable cause letter. A plaintiff has a cause of action for false arrest if the plaintiff is confined without legal justification. *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Probable cause is a defense to false arrest. *Id.* at 479 n.7 ("probable cause is the justification for the arrest, and justification is the affirmative defense to false arrest"). In an action for false arrest, probable cause is generally a question of fact for the jury. *State v. Morgenroth*, 227 S.W.3d 517, 522 n.6 (Mo. Ct. App. 2007). Nonetheless, to defeat summary judgment there must be material facts in dispute, "with one version establishing reasonable grounds and another refuting it." *Signorino v. Nat'l Super Mkts., Inc.*, 782 S.W.2d 100, 103 (Mo. Ct. App. 1989). As discussed above, there is no version of the facts that refutes probable cause. Even had the probable cause letter been supplemented with Dr. Case's trial testimony, the changes would have been so insignificant as to have no bearing on the ultimate finding of probable cause. I will therefore grant summary judgment as to count 7 of Dowell's first amended complaint.

Count 8 alleges malicious prosecution, also on the basis of Bartlett's allegedly false probable cause statement. A person suing on a theory of malicious prosecution must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause

for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged.   *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 807 (Mo. 1984).   Because Dowell cannot prove the want of probable cause for the prosecution, this claim must also fail.   I will therefore grant summary judgment as to count 8 of Dowell's first amended complaint.

## E.  Count 5:   Failure to Intercede

Count 5 of Dowell's complaint alleges that defendant Carson, as the individual responsible for training and supervising the other officer defendants, failed to intercede to protect Dowell from having his Constitutional rights violated as described more fully above.   This count claims violations of Dowell's Fifth, Sixth, and Fourteenth Amendment rights.   A supervisor can incur § 1983 liability "for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation."   *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011) (quoting *Ottoman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003).

A prerequisite to a claim for failure to intercede is a finding of a Constitutional violation.   Since I have already determined that there was no violation of Dowell's Fifth, Fourteenth or Sixth Amendment rights, there can be no claim against Carson

for failing to intercede to protect said rights.   I will grant summary judgment as to count 5 of Dowell's first amended complaint.

**Counts 6 and 9:   Claims against Lincoln County**

Count 6 alleges that Lincoln County failed to instruct, supervise, control, and discipline defendant Bartlett in violation of Dowell's Fourth and Fourteenth Amendment rights.   In particular, Dowell claims that Bartlett unlawfully denied Dowell's right to remain silent and assistance of counsel; fabricated a probable cause statement; punished Dowell without due process; and otherwise deprived him of his Constitutional and statutory rights, privileges, and immunities.   Because none of Bartlett's actions violated Dowell's Constitutional rights, as discussed more fully above, this claim against Lincoln County must also fail.

Count 9 alleges that Lincoln County negligently hired and trained defendant Bartlett under Missouri state law.   Lincoln County is "a public entity with the status of a governmental body and, as such, is immune from suit for liability in tort in the absence of an express statutory provision."   *Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo. Ct. App. 1997) (quoting *Krasney v. Curators of Univ. of Mo.*, 765 S.W.2d 646, 649 (Mo. Ct. App. 1989)).   Dowell claims that Lincoln County has waived its sovereign immunity because it has purchased liability insurance.   *Id.*; Mo. Rev. Stat. § 537.610.1 (1994).   However, Dowell was required to plead facts alleging the existence of an insurance policy and that the policy

covered the claims at issue.    *Brennan*, 942 S.W.2d at 437.   His complaint contains no such allegations, and therefore fails to state a claim against Lincoln County for negligent hiring and training.   I will therefore grant summary judgment as to counts 6 and 9 of Dowell's first amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of defendants Eagan, Boyer, Carson, and Dilworth [#53] is granted as to all counts except count 3, which remains for trial.

**IT IS FURTHER ORDERED** that defendants Bartlett and Lincoln County's motion for summary judgment [#65] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike [#78] is denied, but the alternative motion for leave to file sur-reply included therein and the separate motion for leave to file sur-reply [#79] are granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of February, 2013.